The legal doctrine above announced is, I think, eminently correct. I cannot agree, however, with the conclusion reached by my colleagues after applying those principles of law to the peculiar factual situation of this cause.
The building in question was constructed in 1924, or sixteen years previous to its demolition by the cyclone. It was 48 feet wide and 216 feet long, contained two stories, and was used for the purposes of storage. It was without partitions, being of the warehouse type, but various joists, columns, girders and outside walls supported the second story and roof.
Up until a few weeks before the accident there were stored in the second story of the building 1,600 tons of cotton seed hulls. It was the floor on which these hulls had been resting that fell on decedent.
Defendant's superintendent of plant construction, who had supervised the building's erection, was asked, on direct examination, the question: "I will ask you if William Crawford would have been as safe at the time of the tornado, at the location that he was working, as a man would be in any other similar size and type of construction?" He replied: "I would say so, yes." Following this, but under cross examination, there was propounded to him the query: "This last question asked you, as to the building in which William Crawford was killed, and another building of the same type, would not that depend upon the amount of hulls that had been in the other building, or the strain that it had been subjected to, would not that have an effect on it?" His reply was: "I think so."
The fact that there were other structures in the immediate vicinity that were not demolished by the cyclone, when considered in connection with the quoted observation of defendant's expert, furnishes the conclusion, in my opinion, that the hull house was defective in construction, and that this condition contributed to some extent to the mishap and was a causal connection between the employment and the death.
Analogous to the instant controversy is the case of London Guarantee Accident Company, Ltd., v. Industrial Accident Commission, 202 Cal. 239, 259 P. 1096, 1097, 54 A.L.R. 1392. Recovery under the workmen's compensation statute was sought therein for the death of an employee that resulted when an earthquake demolished the San Marcos Building at Santa Barbara, California, in which he was working. Quoting from the opinion:
"* * * It was shown that the earthquake of June 29, 1925, was the most serious disturbance of its kind that had occurred in said city during its history of over 100 years; that many apparently substantial buildings in the near vicinity of the San Marcos building had been destroyed or severely injured as the result of said disturbance and that some 13 persons lost their lives as a result thereof; that the San Marcos building was constructed according to plans and specifications prepared by a qualified architect and by structural engineers; that all materials such as rock, sand, cement, and steel which went into the construction of said building were thoroughly tested before being used; that the mechanical construction of the building was in accordance with the accepted standards and methods in use at the time it was built; and that after the earthquake a chemist had subjected specimens of the cement taken from the building to a scientific test and found that the specimens so tested showed a sustaining strength of more than 1,400 pounds, whereas the general average of all standards of cement is 1,000 pounds. On the other hand, there was evidence that buildings in the near vicinity of the San Marcos building and similar in character were only slightly damaged by said earthquake; that the San Marcos building was a reinforced concrete *Page 747 
building; and that specimens of concrete from the building showed that it was improperly mixed, resulting in an improper bond between the cement and the gravel or other material in which it was mixed."
After finding that decedent, in the cited case, was compelled to carry on his employment in a defectively constructed building, the court, sitting en banc and in a unanimous decision, approved a commission's award of compensation. In support of this holding, it was said by the tribunal's organ:
"There can be no question in this case that the deceased by being compelled to perform his work in a building defective in construction was exposed to a risk of being injured by an earthquake which was greater than that to which the public generally in that vicinity was subject. It follows, therefore, that the injury received by him was one arising out of his employment.
"While the earthquake, an act of God, may have contributed to the injury, yet it was not the sole cause of such injury, and except for the intervention of some human agency might not have produced any injury whatever. In discussing the meaning of an act of God, the author of Corpus Juris, vol. 1, pp. 1173 and 1174, says: `The phrase has been otherwise defined as * * * an act of nature which implies entire exclusion of all human agency.'"
Consequently, I respectfully dissent. *Page 754